

FILED

June 5, 2015

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 11:47 AM



## COURT OF WORKERS' COMPENSATION CLAIMS
### DIVISION OF WORKERS' COMPENSATION

**EMPLOYEE: Wendal Asberry**

**EMPLOYER: Site Communications**

**INSURANCE CARRIER: The Hartford**

**DOCKET #: 2014-06-0071**
**STATE FILE #:93671-2014**
**DATE OF INJURY: November 3, 2014**
**JUDGE BAKER**

### EXPEDITED HEARING ORDER

THIS CAUSE came before the undersigned Workers' Compensation Judge upon the Request for Expedited Hearing filed by Wendal Asberry, the employee, to determine whether the employer, Site Communications (Site), is obligated to provide medical and past temporary disability benefits. The Court hereby finds as follows:

On February 9, 2015, Mr. Asberry filed a Request for Expedited Hearing with the Tennessee Court of Workers' Compensation Claims, Division of Workers' Compensation, pursuant to Tennessee Code Annotated section 50-6-239. Attorney Keith Jordan represents Mr. Asberry. Attorney T. Tamara Gauldin represents Site and its Carrier, the Hartford. Considering the positions of the parties, the applicable law, and all of the evidence submitted, the Court concludes that Mr. Asberry is entitled to medical benefits and past temporary disability benefits.

### ANALYSIS

#### Issues

Whether Mr. Asberry sustained an injury that arose primarily out of and in the course and scope of employment with Site.

Whether Mr. Asberry is entitled to medical benefits and past temporary total disability benefits.

#### Evidence Submitted

The Court admitted into evidence the exhibits below:

- Exhibit A, NorthCrest Medical Center records[1]

---

[1] The Court pre-marked the pre-marked Exhibits B-D but they were not admitted into evidence.

- Exhibit E, Affidavit of Mr. Asberry
- Ex. F, Mr. Asberry's written statement, November 7, 2013[2]
- Ex. G, Work Notes, Bellsburg Project.

The Court designates the following as the technical record:

- Petition for Benefit Determination (PBD), December 1, 2014
- Dispute Certification Notice (DCN), February 9, 2015
- Request for Expedited Hearing, February 9, 2015.

The Court did not consider attachments to the above filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in the above filings or any attachments thereto as allegations unless established by the evidence.

The following witnesses provided live testimony: Mr. Asberry, Javier Venzor, Pedro Garcia Payes, Josh Schumacher, Kathy Brown, Jonathan Duke and Steve McKarns.

**History of Claim**

Mr. Asberry is a 22-year-old resident of Robertson County, Tennessee. He testified that his employment with Site began on October 1, 2014. At Site, Mr. Asberry worked with other crew members installing communication towers. He earned twelve dollars ($12) per hour for forty (40) or more hours per week.

As part of his job, Mr. Asberry and other crew members drive to job sites with the necessary materials. At the job site, they tighten bolts, attach coaxial cables, and climb communication towers to check whether the equipment will perform well under duress and function safely. Mr. Asberry said that he climbed towers frequently. Prior to the alleged work injury, he never refused to climb a tower or climbed down from one before completing the job.

Mr. Asberry testified that on November 3, 2014, at a work site in Bellsburg, he and other crew members completed a job. He noticed that materials that were being lowered from the top of the tower were falling. While reaching to grab a rope from a pulley in an attempt to secure them, he lost his balance, fell to the ground, and felt his knee "pop." He immediately told his supervisor, Javier Venzor, that he fell and was in pain. Only Chad LaVern, a co-worker, witnessed the incident. That night, the knee became swollen and sensitive to the touch, and the pain intensified. Mr. Asberry applied heat and ice in an effort to control the swelling.

Mr. Asberry went to work the following day, November 4, 2014, but told Mr. Venzor he could not climb towers because of the knee injury. He testified that he "stood there" and made telephone calls in an attempt to schedule a doctor appointment. At approximately 11:00 a.m., Mr. Venzor instructed him to return to the shop to clean out the trucks, so he could complete his workday without losing pay.

---

[2] The date on the statement was incorrect.

The following morning, Mr. Asberry telephoned the Site office at 6:30 a.m. on November 5, 2014, to inform them that he was running late due to car and weather difficulties. Josh Schumacher, the project manager, called him back and asked whether Mr. Asberry had climbed down a tower the previous day. Mr. Asberry said no and attempted to explain why he could not climb the tower on the previous day. Before he could explain, Mr. Schumacher terminated him.

Mr. Asberry telephoned Site's office manager, Kathy Brown, on November 6, 2014, to ask if Mr. Venzor reported the injury. According to Mr. Asberry, she said she did not know, and would check with Mr. Venzor and Steve McKarns, Site's owner, and then get back to him. He testified that he began using crutches that same day and continued using them until late December 2014.

On Friday, November 7, 2014, Mr. Asberry went to Site's office to submit a written statement (Ex. F) regarding the incident and report his hours for the week. He testified that he omitted from the statement that he lost his balance and fell, but that otherwise the statement is accurate. He gave it to Ms. Brown and asked her to file a workers' compensation claim. According to Mr. Asberry, she said she was unfamiliar with the process, but that she would give it to Mr. McKarns and someone would get back to him. He contacted Site over the weekend more than once, and each day on Monday through Wednesday, November 10-13, 2014. He spoke to Ms. Brown, who had no information. After the final attempt on November 13, 2014, he contacted the Department of Labor and learned that Site failed to report the injury. He then obtained legal counsel.

On November 18, 2014, Mr. Asberry went to the NorthCrest Medical Center emergency department (NorthCrest). (*See generally,* Ex. A). He testified that he saw a nurse and doctor and told them both the same chain of events regarding the alleged incident. The notes, however, contain two somewhat different histories. The "Nursing Assessment Note" states "Patient states he was injured at work when materials fell on his knee." (Ex. A, p. 2). The "History of Present Illness" section states "The patient presents with a complaint of L knee pain after injury at work a week prior, states he turned and ran and fell left knee pop." (Ex. A, p. 3). Mr. Asberry acknowledged that the Nursing Assessment Note states that materials fell on him, but said that because he offered great detail, the story is easily misinterpreted.

NorthCrest discharged Mr. Asberry on November 18, 2014, with a diagnosis of "knee derangement." The "Progress Notes" state "advised to follow up with dr. beuchamp [sic], ortho, this week for re-eval, possible outpatient MRI, remain none [sic] weight bearing/crutches/L knee brace[.]" (Ex. A, p. 5).

Mr. Asberry testified that upon his discharge he was placed on restrictions. The discharge instructions explain how to use a knee immobilizer and crutches. Mr. Asberry has not seen the specialist, Dr. Beauchamp, because the visit was not authorized. Mr. Asberry testified that he was physically unable to work until he secured employment at Domino's Pizza on December 22, 2014.

On cross-examination, he explained that he had never worn a knee brace, but does occasionally wear an ace bandage on his knees for protection and that an elastic athletic sleeve covers the ace bandage he wears on his knee. He alternates wearing the sleeve and bandage between

his right and left knees. He testified that he wears the bandage to protect his knees while performing heavy lifting and from bumping into objects. He denied that, on November 5, 2014, he was already late when Mr. Schumacher called him. When asked about the differences between his November 7, 2014 written statement (Ex. F) and his January 26, 2015 affidavit (Ex. E), Mr. Asberry explained that he tried to keep the explanation in the November 7, 2014 statement as simple as possible so he did not notify Site that he had fallen in that statement.

Site called several witnesses in its case-in-chief.

Mr. Venzor testified that on November 3, 2014, he was on top of a tower and Mr. Asberry was on the ground, sending materials up to him as needed. He said that when the materials began to fall, he secured them. He did not see Mr. Asberry's alleged fall. Mr. Asberry did not tell him he fell or that he hurt his knee. On November 4, 2014, Mr. Asberry's duty was to secure a ladder, which he did not complete. Mr. Venzor sent him back to the shop. Mr. Venzor testified that he reports all work injuries to Steve McKarns. On cross-examination, Mr. Venzor conceded that Mr. Asberry was a good and honest employee, who never mentioned a previous knee injury. He said that on November 4, 2014, Mr. Asberry climbed down from the tower before finishing his work but did not say that it was because his knee hurt. Instead, Mr. Venzor testified that Mr. Asberry complained of difficulty securing the bolts on the tower. He maintained that Mr. Asberry worked with him for only two days.

Pedro Garcia Payes, a Site employee, testified that he worked with Mr. Asberry on two jobs. He witnessed Mr. Asberry transporting materials up and down the tower from the ground on November 3, 2014, and he saw the materials "getting away." Mr. Garcia Payes was on top of the tower with Mr. Venzor when the materials got away and said Mr. Venzor "caught the rope" before the materials fell to the bottom of the tower. He also testified that Mr. Asberry did not tell him he had injured his knee on November 3, 2014, and also had not heard Mr. Asberry complain of knee problems before November 3, 2014.

Mr. Schumacher testified that Mr. Asberry did not report a left-knee injury to him on November 3. He said that on November 4, 2014, he was expecting to see Mr. Asberry return to the shop, but never saw him. On November 5, 2014, Mr. Asberry did not come into work, but called in at about 8:00 a.m. He said Mr. Asberry gave no explanation for why he was running late. Mr. Schumacher told him he was terminated for tardiness, for not seeing him on the previous day when he was sent back to the shop, and for climbing down from the tower. Mr. Asberry did not tell him in that conversation about the alleged injury. Mr. Schumacher next saw Mr. Asberry when he came to the shop to write his statement. He asked Mr. Asberry if he saw a doctor because he was using crutches. Mr. Asberry told him he hurt his knee. According to Mr. Schumacher, it was the first he learned of the injury. On cross-examination, Mr. Schumacher maintained that Mr. Asberry called the office at "about 8:00 a.m." on the day he terminated him. However, he admitted he does not log his calls and is not sure of the time "by the minute," but only that it was after Mr. Asberry's start time. He said he does not know whether Mr. Asberry hurt his knee before November 5, 2015. On redirect, he said he did not ask about Mr. Asberry's knee in the telephone conversation because he had no reason to know that he hurt it. He further stated that he did not know the exact time that he spoke with Mr. Asberry on November 5, 2014, but did know that the conversation occurred after 7:00 a.m.

Ms. Brown testified that Mr. Asberry telephoned the office to ask if she had filed an injury report. She did not know what he was talking about, but stated that she would relay the information to Mr. McKarns and get back to him. Her recollection of Mr. Asberry's alleged incident was: "Something about a rope and he went to grab it or something like that." She said that on Friday, Mr. Asberry came to the office, wrote a statement in her presence and gave it to her. On cross-examination, she said she has little experience with workers' compensation claims, and she does not know who handles workers' compensation claims for Site. She gave Mr. Asberry's statement to Mr. McKarns. She recalled Mr. Asberry telephoning the following week, and every time he called she told him she would relay the message. She said she did not know if Mr. Asberry was hurt on the job.

Jonathan Duke, another Site employee, testified that Mr. Asberry told him he had past knee injuries. He said that, while playing backyard football with Mr. Asberry, he wore a metal brace over his left knee before November 2014. On cross-examination, he said he had "no idea" whether Mr. Asberry hurt himself on November 3, 2014. On re-direct, he said he is not in the chain of command to know if someone makes a workers' compensation claim. On re-cross, he said Mr. Asberry never gave details about the past knee injury. On final re-direct, he told the Court that the backyard football was unorganized, and that there was a time when it took place almost every weekend. The last time he played with Mr. Asberry was sometime in 2012.

Mr. McKarns testified that he relays all workers' compensations claims to Site's corporate office in Texas. He explained that crews create daily reports or "work notes" as a "broad description of what they did that particular day," which they submit to Ms. Brown. He testified regarding the completeness of the work notes for the job in Bellsburg (Ex. G). He said Mr. Asberry never told him directly that he was injured, but that he received the written statement. He said he investigated the claim by speaking to Mr. Venzor and other workers on the job site but not Mr. LaVern because he had quit by then. He received no information that Mr. Asberry sustained an injury at work. On cross-examination, he said he was out of town for the week beginning November 3, 2014, and Ms. Brown prepared the work notes. Mr. McKarns conceded that there was nothing in the report that contradicted Mr. Asberry's version of the incident.

On rebuttal, Mr. Asberry testified that Mr. Duke's testimony was "blatantly false." He said that he never wore a metal knee brace when playing backyard football, and that he has never owned a metal knee brace. He has never suffered any previous knee injuries or sought medical treatment for them. He has never discussed a prior knee injury with Mr. Duke.

**Mr. Asberry's Contentions**

Mr. Asberry contends he sustained an injury arising primarily in and out of the course and scope of employment. There is no testimony in the record to contradict Mr. Asberry's account of how he became injured. Mr. Asberry properly reported the claim and Site delayed taking appropriate action. The nurse's account of the incident differs because she was likely confused when he told her what occurred. Mr. Asberry seeks medical benefits, and in particular authorized care with Dr. Beauchamp. He additionally seeks temporary disability benefits from November 5, 2014, until December 22, 2014. The ER physician placed restrictions on Mr. Asberry by requiring

5

the use of crutches, which Site did not accommodate because, at that point, Site had already terminated Mr. Asberry.

**Employer's Contentions**

Site contends the denial was proper. Mr. Asberry failed to mention in his written statement that he lost his balance, fell, and twisted his knee, which is a significant detail. The nurse's note states that he told them materials fell on him, causing the injury. The PBD, filed several weeks after the alleged incident, is the first instance where Mr. Asberry mentioned that he lost his balance and fell. Mr. Asberry's Affidavit does not give details of him falling and twisting his knee. Mr. Asberry testified that he wore an ace bandage and sleeve, and alternated wearing them over each knee during work, but then denied wearing a knee brace to protect his knees while playing backyard football. Mr. Asberry's injury is the result of a preexisting injury. The medical records do not assign restrictions; the records merely instructed Mr. Asberry to apply ice to the knee.

**Findings of Fact and Conclusions of Law**

*Standard Applied*

The Workers' Compensation Law shall not be remedially or liberally construed in favor of either party but shall be construed fairly, impartially, and in accordance with basic principles of statutory construction favoring neither the employee nor employer. Tenn. Code Ann. 50-6-116 (2014). Tennessee Code Annotated section 50-6-239(c)(6) provides that "[u]nless the statute provides for a different standard of proof, at a hearing, the employee shall bear the burden of proving each and every element of the claim by a preponderance of the evidence." Tenn. Code Ann. section 50-6-239(c) (2014). A different standard of proof exists for the issuance of interlocutory orders at Expedited Hearings than the standard of proof required at compensation hearings. *McCord v. Advantage Human Resourcing,* No. 2014-06-0063 (Tenn. Work. Comp. App. Bd., March 27, 2015). A Workers' Compensation Judge may enter an interlocutory order for medical or temporary benefits upon a determination that the injured employee would likely prevail at a hearing on the merits. Tenn. Code Ann. 50-6-239(d)(1) (2014); *cf. McCall v. Nat'l Health Care Corp.,* 100 S.W.3d 209, 214 (Tenn. 2003).

*Factual Findings*

The Court finds that Mr. Asberry suffered a work-related injury on November 3, 2014. Site terminated Mr. Asberry on November 5, 2014, for reasons unrelated to the workers' compensation injury. Mr. Asberry reported the injury to Site Communications on November 7, 2014. Mr. Asberry sought medical treatment on November 18, 2014, at the NorthCrest emergency department. The providers placed restrictions on Mr. Asberry when they gave him crutches and a knee immobilizer. Mr. Asberry became fully re-employed under no restrictions on December 22, 2014. Mr. Asberry earned twelve dollars ($12.00) per hour for a 40-day work week at Site.

*Application of Law to Facts*

6

Site maintains that Mr. Asberry did not suffer a compensable work-related injury. Under Tennessee Workers' Compensation law, an "injury" or "personal injury" by accident is compensable whenever "the injury is caused by a specific incident, or set of incident, arising primarily out of and in the course and scope of employment." Tenn. Code Ann. § 50-6-102(13) (2014). "An injury arises primarily out of and in the course and scope of employment only if it has been shown by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes[.]" *Id*. (internal quotations omitted).

Mr. Asberry testified that, while loading the materials onto a truck, he noticed that materials being lowered from the top of the tower were falling. While reaching to grab a rope from a pulley in an attempt to secure them, Mr. Asberry lost his balance, and, as he fell to the ground, he heard his knee "pop." Mr. Asberry denied that he injured his left knee prior to the accident and did not identify any other possible cause for his knee injury.

The Court finds Mr. Asberry's testimony credible. His testimony regarding the alleged incident was generally consistent with the accounts contained within his statement, PBD, and affidavit. The discrepancies among them are insignificant. Importantly, none of the defense witnesses testified that they could affirmatively state that Mr. Asberry's version of how he injured himself is false or that the injury is not work-related. With regard to the differing histories within the NorthCrest records, Mr. Asberry's explanation that the nurse might have been confused is entirely plausible.

Site attempted to discredit Mr. Asberry's testimony that he never suffered a previous knee injury with Mr. Duke's testimony that he had witnessed Mr. Asberry wearing a metal brace, and that Mr. Asberry told him he wore it because he had a prior knee injury. On cross-examination, Mr. Duke was unable to offer details about the conversation where Mr. Asberry allegedly told him he had a knee injury. Mr. Duke said that the last time they played backyard football together was in 2012, but did not offer a month or day, so that the last time Mr. Duke would have seen him wearing the metal brace would be anywhere between two and three years ago. Mr. Duke's testimony is not persuasive.

The Court finds that Mr. Asberry carried his burden of establishing that he suffered an injury primarily arising out of and in the course and scope of his employment with Site.

Mr. Asberry established a prima facie case for a compensable work-related injury and, depending on the medical proof on causation, is likely to prevail at trial. Because he established a prima facie case, Site must provide medical treatment. Tennessee law requires an employer to provide "...free of charge to the employee such medical and surgical treatment ...made reasonably necessary by accident as defined in this chapter[.]" *See* Tenn. Code Ann. § 50-6-204(a)(l)(A) (2014). Upon being provided notice of a workplace injury, the Workers' Compensation Law requires an employer to "...designate a group of three (3) or more independent reputable physicians, surgeons, chiropractors or specialty practice groups if available in the injured employee's community or, if not so available, in accordance with subdivision (a)(3)(B), from which the injured employee shall select one (1) to be the treating physician." *Id.* at 50-6-204(a)(3)(A)(i).

The providers at NorthCrest recommended follow up treatment with Dr. Beauchamp, an orthopedic specialist. The Court finds that evaluation and treatment by an orthopedic specialist is reasonable and necessary under the circumstances. Site shall provide Mr. Asberry with a panel of orthopedic specialists from which he shall select an authorized treating physician.

Mr. Asberry also requests past temporary disability benefits. An employee is entitled to receive temporary total disability benefits pursuant to Tennessee Code Annotated § 50-6-207(1) whenever the employee has suffered a compensable, work-related injury that has rendered the employee unable to work. *See Simpson v. Satterfield,* 564 S.W.2d 953 (Tenn. 1978); Tenn. Code Ann § 50-6-207(1) (2014). In order to establish a *prima facie* case for temporary total disability benefits, the worker must show that (1) he or she was totally disabled and unable to work due to a compensable injury, (2) the work injury and inability to work are causally connected, and (3) the duration of the disability. *Gray v. Cullom Machine, Tool & Die, Inc.*, 152 S.W.3d 439, 443 (Tenn. 2004). Entitlement to temporary total disability benefits ends whenever an employee is able to return to work. *Cleek v. Wal-Mart Stores, Inc.*, 19 S.W.3d 770, 776 (Tenn. 2000). Temporary partial disability refers to the time, if any, during which the injured employee is able to resume some gainful employment but has not reached maximum recovery. *Williams v. Saturn Corp.*, No. M2004-01215-WC-R3-CV, 2005 Tenn. LEXIS 1032, 7 (Tenn. Workers' Comp. Panel, Nov. 15, 2005).

The Court finds that Mr. Asberry has carried his burden of proof and is entitled to past temporary partial disability benefits. Mr. Asberry hurt his knee while trying to secure a falling load of materials on the jobsite in the course of his employment for Site on November 3, 2014. Site fired Mr. Asberry for tardiness and refusal to complete job duties on November 5, 2014. Mr. Asberry gave timely written notice of the injury on November 7, 2014. On November 18, 2014, Providers at NorthCrest diagnosed Mr. Asberry with knee derangement and issued discharge instructions that prohibited him from bearing weight on his knee.

The Court finds that these discharge instructions are sufficient to show that Mr. Asberry was unable to work as of November 3, 2014. While Mr. Asberry did not receive medical attention directly after suffering the injury, the fact that the condition of his knee had not improved to the point where it could bear weight more than two weeks later leads the Court to this conclusion. Furthermore, although Site may have had work available that would not have required Mr. Asberry to bear weight on his knee, Mr. McKarns fired Mr. Asberry, on November 5, 2014. Therefore, Site never made an offer of accommodated work.

With respect to the amount of benefits due, the Court finds that the period of temporary disability began on November 5, 2014, the day Mr. McKarns terminated Mr. Asberry, and continued until December 22, 2014. In reaching this conclusion, the Court relied on the discharge instructions from NorthCrest, which did not state when Mr. Asberry could begin bearing weight on his knee. Because there is no contrary proof, Mr. Asberry's period of temporary disability did not terminate until he began working at Domino's Pizza on December 22, 2014. While the discharge instructions advised Mr. Asberry to follow up with an orthopedic specialist in one week, he was unable to do so because Site denied the claim. Accordingly, the Court holds that Site must pay Mr. Asberry temporary partial disability benefits for the period from November 5 through December 22, 2014, a period of six (6) weeks and five (5) days. Mr. Asberry's compensation rate is $360.00 based on his average weekly wage of $480.00.

**IT IS, THEREFORE, ORDERED** as follows:

1. Medical care for Mr. Asberry's work injury shall be paid and Site Communications or its workers' compensation carrier shall provide Mr. Asberry with medical treatment for this work injury as required by Tennessee Code Annotated section 50-6-204, to be initiated by Site or its workers' compensation carrier providing Mr. Asberry with a panel of orthopedic physicians and scheduling an appointment with the physician of Mr. Asberry's choice. Medical bills shall be furnished to Site or its workers' compensation carrier by Mr. Asberry or the medical providers.

2. Site shall pay Mr. Asberry back temporary disability payments in the amount of $2,417.15.

3. This matter is set for Initial Hearing on July 8, 2015, at 9:30 a.m.

4. **Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven (7) business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2014). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Division by email to WCCompliance.Program@tn.gov no later than the seventh (7th) business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.**

5. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

ENTERED ON THIS THE 5th DAY OF JUNE, 2015.

_____
**Joshua Davis Baker**
**Workers' Compensation Judge**

**Initial Hearing:**

An Initial Hearing has been set with Judge Joshua Davis, Court of Workers Compensation Claims. You must call (615) 741-2113 or toll free at (855) 874-0474 to participate in the Initial

Hearing.  Please Note:  <u>You must call in on the scheduled date/time to participate.</u>  Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Central Time (CST).

<u>Right to Appeal</u>:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1.  Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal".

2.  File the completed form with the Court Clerk *within seven (7) business days* of the date the Expedited Hearing Order was entered by the Workers' Compensation Judge.

3.  Serve a copy of the Request for Appeal upon the opposing party.

4.  The parties, having the responsibility of ensuring a complete record on appeal, may request from the Court Clerk the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten (10) calendar days of the filing of the Expedited Hearing Notice of Appeal.  Alternatively, the parties may file a statement of the evidence within ten (10) calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must be approved by the Judge before the record is submitted to the Clerk of the Appeals Board.

5.  If the appellant elects to file a position statement in support of the interlocutory appeal, the appealing party shall file such position statement with the Court Clerk within three (3) business days of the filing of the Expedited Hearing Notice of Appeal, specifying the issues presented for review and including any argument in support thereof.  If the appellee elects to file a response in opposition to the interlocutory appeal, appellee shall do so within three (3) business days of the filing of the appellant's position statement.

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 5th day of June, 2015.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|------|----------------|------------------|---------|------------|-----------|---------------|
| **Tamara Gauldin** | | | | | x | Tamara.gauldin@thehartford.com |
| **Keith Jordan** | | | | | x | jordanlawoffice@comcast.net |

**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**

11